UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DERRILL WATT, | ) |
| Movant, | ) |
| v. | ) No. 4:20-CV-922 RLW |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Movant Derrill Watt's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (ECF No. 1), as supplemented (ECF Nos. 4, 11) ("§ 2255 Motion"). The United States opposes the Motion (ECF No. 7), and the matter is ready for decision. For the following reasons, the Court finds the § 2255 Motion is moot and will dismiss it on that basis.

**Factual Background**[1]

On or about May 17, 2017, in St. Louis County, in the Eastern District of Missouri, Watt knowingly possessed a firearm, which traveled in interstate or foreign commerce during or prior to being in Movant's possession, knowing or having reasonable cause to believe that the firearm was stolen.

On that date, officers of the North County Police Cooperative, Special Enforcement Divisions ("NCPC-SED") observed a full-sized van fail to stop at a stop sign at the intersection of Naylor Avenue and Kienlen Avenue. NCPC-SED conducted a traffic stop of the vehicle, and

---

[1]The recitation of facts is taken in substantial part from the Statement of Facts contained in the Guilty Plea Agreement entered into between the parties and accepted by the Court on November 19, 2018. See United States v. Derrill Watt, 4:17-CR-253 RLW ("Criminal Case") (ECF No. 72 ¶ 4).

officers immediately smelled the odor of phencyclidine ("PCP") emanating from the van. Police were advised by a passenger that there was a firearm located inside the vehicle. During a subsequent search of the vehicle police located a firearm; a vodka mini-bar bottle which was three-quarters full (approximately 30 mL) of a substance later determined by laboratory analysis to be PCP, and a package of "More" brand cigarettes under the front passenger seat. Police learned that Movant had given the gun to the front-seat passenger immediately prior to the traffic stop and the passenger placed it under the seat. The firearm was a Smith and Wesson model SD40VE .40 caliber semiautomatic pistol, bearing serial number HFL4790. The firearm was reported stolen through the Riverview Police Department on September 2, 2014. Movant made post-<u>Miranda</u> statements admitting to possessing the weapon.

     A firearm trace indicated that the pistol was stolen prior to Movant possessing it. Movant admitted that he knew or had reasonable cause to believe the pistol was stolen. Movant further admitted he purchased the pistol from an individual "on the street" at a significantly lower price than would have been possible through an authorized retailer.

     The pistol was submitted to the St. Louis County Police Department Crime Laboratory. A trained firearms expert determined the pistol was manufactured outside the State of Missouri and, therefore, had been transported across state lines and in interstate commerce prior to or during Movant's possession of it. The pistol was test fired and it functioned as designed. The expert found that the pistol could expel a projectile by the action of an explosive and is, therefore, a "firearm" as defined under federal law.

     Prior to May 17, 2017, Movant was convicted of at least one felony crime punishable by imprisonment for a term exceeding one year under the laws of the State of Missouri.

**Procedural History**

On May 31, 2017, a federal grand jury returned an indictment charging Movant with one count of being a felon in possession of a firearm in violation 18 U.S.C. § 922(g)(1). (ECF No. 13.)

On July 19, 2017, Movant filed a request for new counsel. (ECF No. 29.) After a hearing before a Magistrate Judge from which the Government was excluded (ECF No. 33), Movant withdrew that request and elected to proceed with Assistant Federal Public Defender (AFPD) William Marsh representing him.

On October 24, 2017, through AFPD Marsh, Movant filed a Motion to Suppress Evidence and Statements seeking to suppress the .40 caliber Smith & Wesson handgun, the package of "More" brand cigarettes, the plastic bottle containing PCP, Movant's statement to police at the scene of his arrest, Movant's recorded statement to police following his arrest, and his written statements. (ECF No. 41.) On December 7, 2017, before any hearing on Movant's motion to suppress, and after another hearing closed to the Government, the Magistrate Judge appointed Attorney Eugene O. Howard to represent Movant, and AFPD Marsh's representation was terminated. (ECF Nos. 47-49.)

Subsequently, Movant filed a motion to withdraw his Motion to Suppress Evidence and Statements and then waived, orally and in writing, his right to file pretrial motions. (ECF Nos. 54, 55, 57.) On February 15, 2018, a third attorney, Craig Concannon, entered on Movant's behalf, and Movant's court-appointed attorney, Mr. Howard, filed a motion for leave to withdraw and was subsequently terminated as Movant's counsel. (ECF Nos. 59-61.) Through his retained attorney Mr. Concannon, Movant filed a motion to set his case for a plea, which stated the parties had been in discussions and agreed to a plea stipulation. (ECF No. 67.)

At the change of plea hearing, and pursuant to the parties' negotiations and a written Guilty Plea Agreement, the Government filed a superseding information charging Movant with one count of possessing a stolen firearm in violation of 18 U.S.C. § 922(j) (ECF No. 69).

The superseding information charged:

### COUNT ONE

The United States Attorney charges that:

On or about May 17, 2017, in the County of St. Louis, within the Eastern District of Missouri,

### DERRILL WATT,

the Defendant herein, did knowingly and intentionally possess a firearm, which previously traveled in interstate or foreign commerce during or prior to being in the Defendant's possession, knowing and having reasonable cause to believe that the firearm was stolen. In violation of Title 18, United States Code, Section 922(j).

(ECF No. 69).

Movant waived indictment on that charge, orally and in writing. (ECF No. 70; ECF No. 80, Plea Tr. 5:11-6:25.) Movant then pleaded guilty to the single-count superseding information pursuant to a Guilty Plea Agreement (the "Agreement"). (ECF No. 72.)

The Agreement provided, in pertinent part:

**3**. **ELEMENTS**

As to Count One, the Defendant admits to knowingly violating Title 18, United States Code, Section 922(j), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are as follows:

*One*, on or about May 17, 2017, in St. Louis County, within the Eastern District of Missouri, the Defendant knowingly and intentionally possessed a firearm knowing or having reasonable cause to believe it was stolen;
*Two*, the firearm was stolen prior to Defendant's possession of it; and
*Three*, the firearm traveled in interstate or foreign commerce at some point during or prior to Defendant's possession of it.

(ECF No. 72, ¶ 3.)

4

With respect to the United States Sentencing Guidelines ("U.S.S.G."), the parties agreed that the Base Offense Level "is found in Section 2K2.1(a) and depends on, among other things, the nature of the Defendant's criminal history and the characteristics of the firearm." (Id. ¶ 6(a)(i).) With respect to applicable Specific Offense Characteristics, the parties agreed "that the following Specific Offense Characteristics apply: two levels should be added pursuant to Section 2K2.1(b)(4)(A) because the firearm was stolen; and four levels should be added pursuant to Section 2K2.1(b)(6)(B) because the firearm was used or possessed in connection with another felony offense." (Id. ¶ 6(a)(ii).)

Pursuant to the Agreement, Movant agreed to "waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, and the guilty plea." (Id. ¶ 7(a)(i).) Further, the Agreement provides that "[i]n light of the Government's agreement to dismiss the Indictment in exchange for Defendant's plea of guilty to the Superseding Information, in the event the Court accepts the plea, and after determining a Sentencing Guidelines range, sentences the defendant within or below that range, the defendant waives all rights to appeal all sentencing issues, including issues related to the Criminal History and how it affects the Base Offense Level and Criminal History Category." (Id. ¶ 7(a)(ii).).

Similarly, Movant agreed to "waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel." (Id. ¶ 7(b).)

During the change of plea hearing, Movant, who was under oath and accompanied by Mr. Concannon, confirmed he had enough time to discuss his case with his attorney, that he was satisfied with his attorney's representation of him, and that he did not feel that there was anything his attorney should have done but did not do in representing him. (Pl. Tr. 7:14-22.) Movant

confirmed his understanding of the trial rights he was foregoing by entering his guilty plea, the consequences of pleading guilty, and the terms of the Agreement. (Id. 7-10.)

Movant stated he understood the elements of the crime to which he was pleading guilty and the Statement of Facts as set forth in the Agreement. (Pl. Tr. 13-14.) Movant further stated he understood the potential statutory penalties to which he was being exposed by virtue of his guilty plea. (Id. 14.) The Court described the Sentencing Guidelines to Movant broadly and explained that the Guidelines provided a recommendation of a range of jail time, but that the Court could give Movant a higher or lower sentence than the guidelines recommend and that a judge does not always have to sentence within the recommended Guidelines. (Id. 14:11-22.)

The Court directed Movant's attention to the Agreement's section on the Sentencing Guidelines: "This section says that you and the Government have agreed to the following Sentencing Guidelines, and I want you to listen as I ask Mr. Concannon to outline those agreements under this section." (Id. 15:2-6.) Mr. Concannon explained, reading from the Agreement, that:

> The parties have agreed that the Base Offense Level as found in Section 2K2.1(a) and – depends upon, among other things, the nature of Defendant's criminal history and the characteristics of the firearms. The specific offense characteristics, the parties agree that the following specific offense characteristics apply. Two levels should be added pursuant to Section 2K2.1(b)(4)(A). Four levels you [sic] should be added to Section 2K2.1(b)(6)(B) because the firearm was used or possessed in connection with another felony offence….We've also agreed that my client is to receive two levels; should be deducted for acceptance of responsibility. And because he has timely notified the Court, an additional one level will be accepted – will be reduced based upon his acceptance of responsibility in short.

(Id. 15:8-23.) At the Court's direction, Mr. Concannon further explained the terms of the Agreement, specifically that:

> The parties, of course, agree that the Court is not bound by the guideline analysis agreed to herein. The parties may not have foreseen all applicable guidelines. The Court may, in its discretion, apply or not apply any guideline, despite the agreement herein, and the parties shall not be permitted to withdraw the Plea Agreement.

6

(Plea Tr. 16:10-15.) The Court also explained to Movant on the record the Agreement's provisions regarding waiver of appellate and habeas rights, and Movant affirmed his understanding. (Id. 18:1–19:5.)

At the conclusion of the hearing, the Court accepted the guilty plea, finding Movant was competent to enter the plea; that he knew his rights; and that he was entering the plea voluntarily. (Id. 21:2-4.) The Court also found that the plea had a factual basis and contained all of the elements of the crime, and, therefore, accepted Movant's guilty plea. (Id. 21:4-7.)

On October 3, 2018, the Final Presentence Investigation Report ("PSR") was issued by the U.S. Probation Office. (ECF No. 80.) The PSR provided, among other things, that Movant's Base Offense Level was 20 pursuant to Section 2K2.1(a)(4)(A) because Movant "committed any part of the instant offense subsequent to sustaining one felony conviction for … a crime of violence (Assault Second Degree, Docket No. 12CO-CR00036)." (PSR ¶ 21.) The PSR added two levels to the Base Offense Level pursuant to Section 2K2.1(b)(4) because "the firearm was stolen." (PSR ¶ 22.)

The PSR added four levels to the Base Offense Level pursuant to Section 2K2.1(b)(6) because "[a]s the parties agreed, that the defendant used or possessed any firearm or ammunition in connection with another felony offense (Possession of a Controlled Substance-PCP)." (PSR ¶ 23.) With the deduction of three levels for acceptance of responsibility, Movant's Total Offense Level was calculated to be 23. (Id. ¶ 31.) With a Criminal History Category of V, the PSR determined a sentencing guidelines range of 84 to 105 months' imprisonment. (Id. ¶ 73.)

The PSR described the impact of the Plea Agreement as follows:

> 74. Had the defendant been convicted of the original indictment, Felon in Possession of a Firearm, he would have been subjected to a statutory maximum sentence of 10 years, along with a term of supervised release of not more than three years and a maximum fine of $250,000.

7

75. Pursuant to the plea agreement, in exchange for defendant's plea of guilty to the Superseding Information, the Government agreed that no further federal prosecution would be brought in the Eastern District of Missouri relative to defendant's violations of federal law, known to the United States at the time of the plea, arising out of the events set forth in the Superseding Information. Had the Government filed a Superseding Indictment, the Government would have charged the defendant with Possession with Intent to Distribute Phencyclidine (PCP), and he would have been subject to a maximum statutory sentence of 20 years, a term of supervised release of not less than 3 years, and a fine of $1,000,000.

76. Furthermore, the Government would have charged the defendant with Possession of a Firearm in Furtherance of a Drug Trafficking Crime, and Watt would have been subject to a minimum sentence of 60 months imprisonment, consecutive to all other counts, a term of supervised release of not more than 3 years, and a fine of $250,000.

(PSR ¶¶ 74-76.)

On September 23, 2018, Movant filed an Acceptance to the PSR, stating that he had no objection to its contents. (ECF No. 77.) Movant also filed a Motion for a Downward Departure and/or a Variance Pursuant to 18 U.S.C. § 3551(a), arguing for a downward departure pursuant to U.S.S.G. § 4A1.3 due to overstated criminal history and pursuant to U.S.S.G. § 5H1.5 due to Movant's difficult upbringing. (ECF No. 78 at 1-4.) Movant also argued for a variance based on the factors set out in 18 U.S.C. § 3553(a). (Id. at 5-6.) Movant argued for a sentence of 40 months' imprisonment in the federal Bureau of Prisons. The Government filed a response in opposition. (ECF No. 79.)

Movant appeared before the Court for sentencing on October 10, 2018. (ECF No. 83.) At the outset of the hearing, the Court asked Movant whether he and Mr. Concannon had an opportunity to read and discuss the PSR. (Sent. Tr. 2:13-15.) Movant responded "Yes, sir." (Id.) Movant's counsel informed the Court, "We have accepted the report. We have no objections to the factual accuracy." (Id. 2:21-23.) The Court then asked if there were any objections to the Probation Officer's application of the Sentencing Guidelines, and counsel for the Government and counsel for Movant both stated, "No." (Id. 2:24-3:2.) As neither party had a factual or legal objection to

8

the PSR, the Court adopted the findings of fact and legal conclusions contained therein, including the sentencing guidelines range of 84 to 105 months' imprisonment. (Id. 3:3-9.)

The Court gave defense counsel an opportunity to make a statement and present information in mitigation of the sentence, which Mr. Concannon did, referencing the written motion previously filed. (Sent. Tr. 4:2-18.) Movant also spoke on his own behalf. (Id. 4:22-5:15.) The Government argued for a guideline sentence, explaining that as part of the negotiations in the case, the Government agreed not to charge Mr. Watt with any drug crimes, including a violation of 18 U.S.C. § 924(c), which would have carried a 5-year mandatory minimum term of imprisonment. (Sent Tr. 6:1-5.) The Government stated that Movant "was also facing exposure as a – career offender if those charges had been levied and we were prepared to seek that indictment … simply put … those charges were always on the table, and it was due to negotiation and Mr. Watt's acceptance that we settled on the current charge." (Id. 6:9-11.)

After hearing argument from counsel and allocution, the Court sentenced Movant to a below-guidelines sentence of 80 months' imprisonment to be followed by two years of supervised release. (Id. 6-7; Judgment, ECF No. 84.) In pronouncing the sentence, the Court found that "the instant offense involved the Defendant, a previously convicted felon, in possession of a stolen firearm and PCP." (Sent. Tr. 6:20-23.)

On October 15, 2018, Movant filed a Notice of Appeal. (ECF No. 86.) On appeal, Movant challenged the application of the four-level enhancement for possessing the firearm in connection with another felony offense pursuant to U.S.S.G § 2K2.1(b)(6)(B), through his counsel and also in a pro se brief. On July 22, 2019, the Eighth Circuit Court of Appeals issued its opinion concluding that the appeal waiver in the Agreement was enforceable and that it applied to the issue raised on appeal, i.e., applicability of the four-level enhancement. United States v. Watt, 773 F. App'x 855, 855-56 (8th Cir. 2019) (unpublished per curiam). The Eighth Circuit also concluded that after

9

independent review of the record, no other nonfrivolous issues existed. Id. at 856. The Court of Appeals' mandate issued on August 12, 2019.

On July 14, 2020, Movant timely filed the instant motion for post-conviction relief.

**Legal Standard**

Pursuant to 28 U.S.C. § 2255, a defendant may seek relief on grounds that the sentence was imposed in violation of the Constitution or law of the United States, that the Court lacked jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. To warrant relief under § 2255, the errors of which the movant complains must amount to a fundamental miscarriage of justice. Davis v. United States, 417 U.S. 333 (1974); Hill v. United States, 368 U.S. 424, 428 (1962). The Supreme Court has instructed that "a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

The Court must hold an evidentiary hearing to consider claims "unless the motion, files, and record conclusively show [the movant] is not entitled to relief." Koskela v. United States, 235 F.3d 1148, 1149 (8th Cir. 2001).

**Grounds for Relief**

In the § 2255 motion (ECF No.1), Movant raises two related claims for post-conviction relief: (1) ineffective assistance of counsel because defense counsel made no objection to the PSR's application of a four-level enhancement for possessing the firearm in connection with another felony offense pursuant to U.S.S.G § 2K2.1(b)(6)(B); and (2) District Court error in applying the four-level enhancement pursuant to § 2K2.1(b)(6)(B) because the Court did not affirmatively find by a preponderance of the evidence that the firearm facilitated Movant's drug offense, i.e., his possession of PCP.

In the first amendment to the § 2255 Motion (ECF No. 4), Movant states: "Petitioner discover of [sic] United States v. Bolden (No. 14-4140) (4th Cir. July 13, 2020), arguing 4 points added as enhancement to sentence, violated his rights and sentencing illegally." (Id. at 1.) Movant "request[s] that United States v. Bolden be submitted as part support of his argument." (Id.)

In a second amendment to the § 2255 Motion (ECF No. 11), Movant again challenges the four-level enhancement pursuant to § 2K2.1(b)(6)(B), asserting that the Court erred because it did not affirmatively make a finding that the weapon facilitated the drug offense before applying the assessment. (ECF No. 11 at 2.) Movant also argues that the amount of PCP he possessed did "not meet federal guidelines for the charge of possession nor distribution" and states he was never charged with drug possession. (Id.)

**Discussion**

A petition for habeas corpus must be filed while the movant is "in custody" under sentence of a federal court. 28 U.S.C. § 2255(a); see Maleng v. Cook, 490 U.S. 488 (1989). The Supreme Court's "interpretation of the 'in custody' language has not required that a prisoner be physically confined in order to challenge his sentence on habeas corpus." Id. Once a sentence has expired, however, a habeas movant must show a concrete and continuing injury, i.e., a collateral consequence of the conviction, in order to continue his action. Spencer v. Kemna, 523 U.S. 1, 7-8 (1998); Farris v. United States, No. 4:15-CV-01728 JAR, 2019 WL 316567, at *2 (E.D. Mo. Jan. 24, 2019) (citing cases).

This is because the case or controversy requirement of Article III, Section 2 of the United States Constitution requires that a case or controversy must remain in existence through all stages of federal judicial proceedings. "The parties must continue to have a personal stake in the outcome of the lawsuit." Spencer, 523 U.S. at 7 (quoted case omitted). To meet this requirement, Watt

11

"must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Id. (quoted case omitted).

In the present case, Watt makes allegations of ineffective assistance of counsel and trial court error, all of which concern applicability of the four-level enhancement for possessing the firearm in connection with another felony offense pursuant to U.S.S.G § 2K2.1(b)(6)(B). Watt does not challenge the validity of his conviction, or his supervised release term.

Under these circumstances, the Court concludes that Watt's claims no longer present a case or controversy and are therefore moot, because Watt challenges his sentence only and has now finished serving his term of imprisonment. Even if the Court were to rule in Watt's favor, such a ruling would have no effect. There is no possible remedy available to shorten a term of imprisonment that Watt has completed serving. Watt does not show a collateral consequence of the conviction and therefore his § 2255 motion is now moot. See Giese v. United States, 853 F. App'x 46, 47 (8th Cir. 2021) (dismissing as moot appeal from denial of motion to vacate sentence under § 2255, where the movant had been released from prison and his § 2255 motion alleged only ineffective assistance of counsel for failing to seek a downward departure); see also Owen v. United States, 930 F.3d 989, 990 (8th Cir. 2019) (holding that release will moot a § 2255 motion when the movant "challenge[s] only his term of imprisonment" and not "the term of supervised release").

In addition, Watts' claims are waived, procedurally defaulted, and/or fail on their merits for the reasons set forth in the Government's Response.

**Conclusion**

For these reasons, Movant Derrill Watt's § 2255 Motion is moot. No case or controversy exists because he has completed serving his imposed term of imprisonment and does not show a collateral consequence of the conviction. The § 2255 Motion is subject to dismissal on that basis.

Accordingly,

**IT IS HEREBY ORDERED** that Derrill Watt's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (ECF No. 1), as supplemented (ECF Nos. 4, 11) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that a certificate of appealability shall not be issued in this case as the Court concludes that Watt has not made "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), or demonstrated that reasonable jurists could debate whether the Court's procedural ruling is correct.  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

A separate Judgment will accompany this Memorandum and Order.

*/s/ Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 20th day of March, 2023.